[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 519 
Millie Vick, as guardian of John David Powell, her incapacitated son, appeals from a summary judgment in her action against Kathy Sawyer, an official of the Alabama Department of Mental Health and Mental Retardation ("the Department"), and Levi Harris and Susan Stuardi, as directors of the Albert P. Brewer Developmental Center ("the Center"), seeking recovery for injuries allegedly suffered by Powell while he was in the care and custody of the Center, which is operated and managed by the Department. This is second time this Court has addressed the issues presented in this case. SeeEx parte Alabama Dep't of Mental Health MentalRetardation, 840 So.2d 876 (Ala. 2002). We affirm.
Vick commenced this action against Sawyer, Harris, Stuardi, and the Department on June 7, 2001, seeking recovery for injuries allegedly sustained by Powell on four separate occasions: November 28, 1992; December 31, 1992; January 2, 1993; and June 8, 1999. The complaint alleged that, on those occasions, Powell "suffered injuries from abuse and neglect while at the Center." It also alleged (1) that Harris and Stuardi"negligently failed to prevent continued abuse and neglect to John David Powell"; (2) that Sawyer, Harris, and Stuardi "negligently failed to correct [a] long-standing problem" of abuse of residents by employees of the Center; and (3) that Sawyer, Harris, and Stuardi"negligently failed to supervise employees of the [Department] including, but not limited to, negligently
failing to inform employees of the policies and regulations;negligently failing to have supervisors properly train employees; [and] negligently allowing employees to abuse residents and negligently failing to monitor residents." (Emphasis added.)
As we noted in our first opinion in this case, Vick sought production of the "investigative report[s] of the bureau of special investigations (`BSF), the investigative division of [the Department], relating to injuries Powell received while he was a resident at the [Center]." 840 So.2d at 876. The Department objected to producing the reports on the ground that such reports were "[l]aw enforcement investigative reports and related investigative material," which, under A.la. Code 1975, § 12-21-3.1(b), are discoverable "prior to the disposition of the criminal matter under investigation . . . only upon showing that the party seeking discovery has substantial need of the materials and is unable, without undue hardship, to obtain the substantial equivalent by other means." § 12-21-3.1(d). According to the Department, "[a]ll witnesses interviewed by [the] BSI and all the documents reviewed by [the] BSI were available to [Vick]," who had failed to "present sufficient evidence to meet the requirements of [§ 12-21-3.1]." *Page 520 
The trial court rejected the Department's argument and ordered production of the reports. In our opinion released on July 3, 2002, we directed the trial court to vacate that order, holding that the Department may ultimately "be compelled to produce the BSI investigation report[s], but only after Vick ha[d] shown that she [was] unable, without undue hardship, to obtain the substantial equivalent of the information contained in the report[s] by other means."840 So.2d at 877. On March 7, 2005, Vick filed a "renewed motion to compel production of the Bureau of Special Investigations reports." The trial court denied that motion.
Subsequently, Sawyer, Harris, and Stuardi moved for summary judgments on the ground that they are entitled to "State-agent immunity," as that concept is stated in Ex parteCranman, 792 So.2d 392 (Ala. 2000), and as it has been applied in Cranman and its progeny. Stuardi summarized her argument, as follows:
 "Susan Stuardi is entitled to the defense of State-agent immunity in her personal capacity because any of her actions taken with respect to John David Powell (or any of the other residents at the [Center]) were undertaken in her capacity as Facility Director. There is no evidence that Ms. Stuardi exceeded the scope of her authority or violated any rule or regulation or that she acted willfully, maliciously, fraudulently or in bad faith. Ms. Stuardi is entitled to State-agent immunity . . . inasmuch as she was a state employee, an agent of the state, and acted at all times by exercising her judgment in executing work responsibilities."
Similarly, Harris and Sawyer argued that they are entitled to "immunity for exercising their judgment in the administration of the Department and the [Center]." In particular, they contended that they are entitled to immunity "for exercising their judgment with regard to allocating resources, hiring, firing, transferring, assigning, or supervising personnel; discharging duties imposed on the Department and/or the [Center] by statutes, rules, or regulations; and exercising judgment in the . . . counseling or releasing [of] persons of unsound mind."
Vick did not oppose the summary-judgment motions on their merits. Instead, she moved, pursuant to Ala. R. Civ. P. 56(f),[1] "to continue the summary judgment hearing .. . until a reasonable time after [she was] allowed to conduct [her] remaining discovery." She requested that the trial court conduct an in camera review of the BSI reports, stating: "Plaintiff feels that after this court views the BSI reports,the court will find the information discoverable and that without production there will be an undue hardship on the Plaintiff to locate the information from other sources." (Emphasis added.)
On June 16, 2005, the trial court granted the summary-judgment motions, stating:
 "This matter is before the court on several pending motions. The remaining defendants, Kathy Sawyer, Levi Harris and Susan Stuardi have filed motions for summary judgment based primarily on their claims of state agent immunity. See Ex parte Cranman, 792 So.2d 392 (Ala. 2000). [Vick], for her part, has filed a motion to continue the hearing on summary judgment pursuant *Page 521 
to Rule 56(f) and reargues her motion for the court to enter an order directing the defendant to produce a copy of BSI reports. This court previously denied such a motion finding that [Vick has] failed to meet [her] burden of overcoming the privilege associated with such documents. See Ex parte Alabama Department of Mental Health Mental Retardation, 840 So.2d 863 (Ala. 2002).
 "[Vick] continues to note the `undue hardship' she suffers due to the lack of availability of information about witnesses for the occurrences made the basis of this suit, specifically those occurring on November 28, 1992, December 31, 1992, and January 2, 1993. The court would note that a primary cause of [Vick's] hardship is her failure to file her lawsuit until 2001, almost nine years after three of the four occurrences of which she complains. It would appear to be inequitable to permit [Vick] to create, in large part, the hardship, and then argue the hardship as grounds for overcoming the privilege against disclosure of BSI records. For this reason, the court again denies the motion to compel the production of the BSI records, and further denies [Vick's] motion to continue the summary judgment hearing so that [she] may obtain the BSI records in order to defend against the motions for summary judgment.
 "[Vick] concedes that without the benefit of the BSI records, she has no evidence in opposition to the motion[s]. Thus, upon the review of the record, it appears to the court that the three remaining defendants are all entitled to state agent immunity under the facts of this case and accordingly, they are due to be dismissed from this lawsuit.
 "For the foregoing reasons, [Vick's] motion to continue the motion for summary judgment hearing is denied. Defendants Sawyer, Harris, and Stuardi's Motions for Summary Judgment are hereby GRANTED."
Vick appealed, seeking a reversal of the summary judgments and an order directing the trial court to order production of the BSI reports.[2]
"A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Hughes v.Hertz Corp., 670 So.2d 882, 885 (Ala. 1995) (citing Rule 56, Ala. R. Civ. P.). "[T]he summary-judgment stage is generally the appropriate point in litigation for determining [State-agent] immunity questions," Cornner v. Mitchell,886 So.2d 816, 816 (Ala.Civ.App. 2003) (Pittman, J., dissenting), "following appropriate discovery." Ex parte Alabama Dep't ofMental Health Mental Retardation, 837 So.2d 808,813-14 (Ala. 2002).
"Rule 56(f) protects a party opposing a motion for summary judgment if the party states reasons why he cannot present essential facts." Starks v. Commercial Union Ins. Co.,501 So.2d 1214, 1216 (Ala. 1987). Proper application of Rule 56(f) requires the nonmoving party to demonstrate by affidavit,Herring v. Parkman, 631 So.2d 996, 1002 (Ala. 1994), "that matters it seeks by further discovery are `crucial' to its case." Smith v. Yanmar Diesel Engine Co.,855 So.2d 1039, 1042 (Ala. 2003) (citing Stallworth v. AmSouthBank, 709 So.2d 458, 468 (Ala. 1997)); see also McCullarv. Universal Underwriters Life Ins. Co., 687 So.2d 156, 161
(Ala. 1996) (nonmovant at summary-judgment stage *Page 522 
has the "burden of proving how information from [documents sought in discovery] is crucial to her case"). The requirements of Rule 56(f) are similar to what the proponent of production in a case such as this one must demonstrate.
Specifically, we held in Ex parte Alabama Department ofMental Health Mental Retardation, 840 So.2d 863, 867
(Ala. 2002), that investigative reports of the BSI are "protected under § 12-21-3.1," Ala. Code 1975, and, consequently, that a party is not entitled to information in the reports absent "a showing of undue hard-ship."840 So.2d at 868. In so doing, we discussed the manner in which the proponent of production of the reports could make such a showing:
 "A showing of undue hardship requires more than a mere conclusory statement by the party seeking the information that he or she could not obtain the equivalent of the information in the reports sought by discovery without undue hardship. Before the trial court could grant [the proponent's] motion to compel the production of the BSI investigation report, [she] was required to show that she had at least tried to interview or depose the witnesses interviewed by BSI investigators. Furthermore, before the trial court granted [the proponent's] motion to compel production of the BSI report, the trial court should have conducted an in camera inspection of that report to determine whether the statements contained in the report are relevant and whether the information is such that it cannot be obtained from another source without undue hardship. See Ex parte May, 393 So.2d 1006, 1007 (Ala. 1981) (holding that if tangible material is sought in discovery, in camera examination of the material may be required). The trial court is the appropriate forum for testing the validity of the justifications [the proponent] argues. . . .
 ". . . Undue hardship might include, among other things, the unavailability of a witness whose statement cannot be obtained from another source; the lack of access to patients who had given statements to the BSI investigators or the impossibility of obtaining the equivalent of those statements from patients because of a patient's physical or mental deterioration; the refusal of patients or hospital staff to make a statement to [the proponent] for fear of reprisal by the hospital; or the refusal of patients or staff members or even former staff members to speak to [the proponent] out of fear of self-incrimination."
840 So.2d at 868-69 (emphasis added). Thus, under §12-21-3.1, the proponent of discovery must not only demonstrate a general unavailability of witnesses, but she must also — as under Rule 56(f) — apprise the trial court of the purported relevance and materiality of the information sought.
In connection with her Rule 56(f) motion, Vick's counsel filed an affidavit, stating: "[Vick] is in the unique position of trying to determine what happened to her son on the four occasions he obtained injuries." The affidavit then described counsel's efforts to contact witnesses who might have information regarding the cause of Powell's injuries. Counsel stated that he had deposed six individuals, including Sawyer and Harris, but none of them "remembered anything about [Powell's] injuries." Counsel also said that he had contacted 11 other former employees of the Center, who likewise remembered nothing about Powell's injuries. Counsel then stated that searching for additional witnesses would be prohibitively expensive. It was for that reason that, according to counsel, Vick could not respond to the summary-judgment motions "without *Page 523 
reviewing the BSI reports." Vick asserts this same ground for the production of the BSI reports in her briefs on appeal.
In opposition to this argument, the defendants all contend that the reports are immaterial to the defense asserted in their motions for summary judgment, namely, that Vick's claims against them are barred by State-agent immunity. They also contend that Vick has failed to apprise the trial court — and this Court — of the potential relevance of the reports. Stuardi argues that Vick has "offered no explanation to link the [r]eports to the issues supporting immunity from suit under Cranman and [its progeny]." Stuardi's brief, at 25. Stuardi insists that Vick's Rule 56(f) affidavit does not state "what information the BSI [r]eports could provide, outside of identifying who injured [Powell]," and that it does not explain "how [such] information would shed necessary light on the State-agent immunity issue[ ]," which was the basis of her summary-judgment motion. Stuardi's brief, at 25. According to Sawyer and Harris, Vick has failed "even to make a hypothetical argument" linking the information she purports to seek from the BSI reports to their State-agent-immunity defense. Joint brief of Sawyer and Harris, at 50. We agree.
State agents are "`immune from civil liability'" in their personal capacities for negligence and wantonness, when the challenged conduct involves the exercise of judgment (1) in the administration of a government agency or department, including "`allocating resources,'" and "`hiring, firing, transferring, assigning, or supervising personnel'"; or (2) in "`the discharge of duties imposed by statute, rule, or regulation in . . . counseling or releasing persons of unsound mind. . . .'" Howard v. City of Atmore, 887 So.2d 201,204-05 (Ala. 2004) (quoting Cranman, 792 So.2d at 405). See also Giambrone v. Douglas, 874 So.2d 1046
(Ala. 2003). Immunity also attaches to conduct involving the "`formulation of] plans [or] policies,'" and to conduct involving the discharge of governmental duties imposed "`by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner.'"Howard, 887 So.2d at 204-05 (quoting Ex parteCranman, 792 So.2d at 405).
It is uncontroverted that neither Sawyer nor Harris nor Stuardi was directly involved in Powell's care or treatment. Harris and Stuardi testified by affidavit that their duties as directors of the Center were administrative, involving formulating plans and policies and exercising judgment in allocating resources, supervising employees, and implementing standards set by the Department. They both testified that there were no "detailed" rules, guidelines, or "checklists" with which they were required to comply. Similarly, Sawyer's affidavit describes Sawyer as an executive official "exercis[ing] discretion and judgment in allocating resources among the various facilities the [Department] operated," and in "developing] plans, policies and procedures to ensure that the [Department] could discharge its .. . mission." She stated that "[t]here were no detailed checklists, guidelines or specific procedures" constraining her discretion.
The affidavits of Sawyer, Harris, and Stuardi set forth the quintessential elements of State-agent immunity. Indeed, Vick's complaint alleges only that the defendants actednegligently in the exercise of their supervisory functions. Such averments are prima facie contrary to well-established immunity principles.
As we have already pointed out, Vick's only response to the summary-judgment motions is the argument presented in her Rule 56(f) motion, and repeated here, that *Page 524 
she needs the BSI reports to ascertain the cause of Powell's injuries on the four occasions made the basis of this action. Indeed, she argues that the discovery of "[h]ow or why these injuries occurred is still unknown to [Vick] and that is whythis suit was filed." Vick's brief, at 12 (emphasis added). To be sure, she asked the trial court to conduct an incamera review of the BSI reports, but in doing so she stated only that it would "find the informationdiscoverable." (Emphasis added.) She did not apprise the court of the issue for which the information would be "discoverable." Specifically, she did not suggest to the court what facts should be the focus of its in camera review, or how such facts would be relevant, Ex parte AlabamaDepartment of Mental Health, 840 So.2d at 867, or "crucial," McCullar, 687 So.2d at 161, to overcoming the defendants' motions for a summary judgment based on their status as State agents.
In summary, Vick has failed to show that she is entitled to the reports, and, because she does not address the merits of the motions for a summary judgment, she has failed to show that the trial court erred in entering summary judgments for Sawyer, Harris, and Stuardi. Those judgments are, therefore, affirmed.
AFFIRMED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] Rule 56(f) provides:
 "Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot, for reasons stated, present . . . facts essential to justify the party's opposition, the court may deny the motion . . . or may order a continuance to permit . . . discovery to be had or may make such other order as is just."
[2] All of the claims against the Department were dismissed, pursuant to a joint motion of the parties, on May 5, 2005. Therefore, the Department is not involved in this appeal.